JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carmelo Ocasio, Jr., Administrator of the Estate of
Carmelo Gabriel Ocasio, Deceased

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Henry George, Esq. Law Office of Gregory Pagano
1315 Walnut St. Floor 12 Phila. PA 19107 215-636-0160

## DEFENDANTS

City of Philadelphia, Commissioner Blanche Carney,
Correctional Officers John Doe 1-10

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983 and 1988

Brief description of cause:
Death of Inmate at Curran Fromhold Correctional Facility by Drug Intoxication

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
September 11, 2024

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

05/2023

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _7133 Erdrick St. Philadelphia PA 19135_

Address of Defendant: _1515 Arch St 14th Floor Philadelphia PA 19102_

Place of Accident, Incident or Transaction: _Curran Fromhold Correctional Facility 7901 State Rd. Phila PA 19136_

**RELATED CASE IF ANY:**
Case Number: _____ Judge: _____ Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court? Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ **is not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _9/11/24_   _Hey Ge_   _322481_
Attorney-at-Law *(Must sign above)*   Attorney I.D. # *(if applicable)*

---

**Civil** (Place a √ in one category only)

**A. Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts)
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☐ Employment
9. ☐ Labor-Management Relations
10. ☑ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☐ All Other Federal Question Cases. *(Please specify):*_____

**B. Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):*_____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, _HENRY George_, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _9/11/24_   _Hey Ge_   _322481_
Attorney-at-Law *(Sign here if applicable)*   Attorney ID # *(if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Carmelo Ocasio, JR. Estate of
Administrator of the Estate of
Carmelo Gabriel Ocasio, Deceased

v.

City of Philadelphia, et al

CIVIL ACTION

NO. 24-4798

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (   )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          (   )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (   )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          (   )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          (   )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (✓)

9/11/24       Henry George Hey the     Plaintiff
**Date**           **Attorney-at-law**       **Attorney for**

215-636-0160     215-636-0164     Hgeorge@paganolaw.Net

**Telephone**          **FAX Number**         **E-Mail Address**

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

| | |
|---|---|
| CARMELO OCASIO, JR, ADMINISTRATOR OF THE ESTATE OF CARMELO GABRIEL OCASIO, DECEASED 7133 Erdrick Street Philadelphia, PA 19135 | CIVIL ACTION<br><br>NO. 24-CV-4798<br><br>JURY TRIAL DEMANDED |
|            PLAINTIFF | |
|          VS. | |
| CITY OF PHILADELPHIA 1515 Arch Street. 14th Floor Philadelphia, PA 19102          AND COMMISSIONER BLANCHE CARNEY Commissioner of Philadelphia Department of Prisons. In her individual and official capacity as Commissioner of Philadelphia Department of Prisons C/O City of Philadelphia Law Department 1515 Arch Street, 14th Floor Philadelphia, PA 19102          AND CORRECTIONAL OFFICERS JOHN DOE 1-10 C/O City of Philadelphia Law Department 1515 Arch Street, 14th Floor Philadelphia, PA 19102 | |
|          DEFENDANTS | |

## **COMPLAINT**

Plaintiff, Carmelo Ocasio, Jr., as Administrator of the Estate of Carmelo Gabriel Ocasio, Deceased by and through his attorney Henry George, Esq. alleges as follows:

1. This action arises from the death of Carmelo Gabriel Ocasio, a twenty-two year-old man, who died on or about September 18, 2022 as a result of the conduct of Defendants in failing to monitor him, other inmates, and correctional officers at the Curran Fromhold

Correctional Facility, where he was incarcerated. The Defendants allowed Carmelo Gabriel Ocasio to come into possession of Fentanyl and Alprazolam and ingest these drugs. Carmelo Gabriel Ocasio became sicker and sicker without any aid from Defendants until he died under the Defendants' watch, despite his cellmate begging prison staff to assist. Carmelo Gabriel Ocasio's death was a foreseeable result of the conduct of the individual and institutional defendants who were aware of the insufficiency of their policies and procedures to monitor and supervise inmates with substance addictions, and had allowed inmates to possess and ingest controlled substances causing them to overdose and die. Defendants were aware of the insufficiency of their policies because twenty-one (21) inmates, including Carmelo Gabriel Ocasio, died as a result of a drug overdose in Philadelphia jails since 2016. Eighteen (18) of these deaths occurred at Curran Fromhold Correctional Facility. Furthermore, the City of Philadelphia has a custom of allowing controlled substances to enter its jails. From January 1, 2014 through February 28, 2021, there have been 1,162 instances of drugs being found within City of Philadelphia jails. The City of Philadelphia knew about this custom and took no action.

## PARTIES

2. Plaintiff, Carmelo Ocasio, Jr., is the father of Carmelo Gabriel Ocasio, deceased, and an adult currently residing at 7133 Erdrick Street, Philadelphia, PA 19135.

3. On March 28, 2024, Plaintiff Carmelo Ocasio, Jr. was appointed Administrator of the Estate of Carmelo Gabriel Ocasio., deceased. (See Letters of Administration, attached hereto as Exhibit "A".)

4. Defendant, City of Philadelphia, is a local and/or municipal governmental agency, a legal entity in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania and Philadelphia law and acting by and through its respective agents, servants and/or employees and at all relevant times hereto, had a registered office at 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania 19102.

5. At all material times, defendant, City of Philadelphia was charged with the responsibility of providing adequate medical care, treatment, supervision and security to inmates housed at Curran Fromhold Correctional Facility (herein "CFCF"), including decedent, Carmelo Gabriel Ocasio, and delegated that constitutional duty to its employees, including but not limited to defendants Correctional Officers John Doe 1-10.

6. Defendant City of Philadelphia operates, supervises, and funds the Philadelphia Department of Prisons and CFCF and was at all times material hereto responsible for establishing policies and practices, budgets, hiring, training of employees, contracting for specialty services, providing other administrative duties relevant to the operation of the Philadelphia Department of Prisons and CFCF, and employs various other Defendants. This Defendant is sued in its official capacity, and at all times material, was acting under color of state law and authority.

7. Defendant Commissioner Blanche Carney (herein "Carney") is a citizen of the United States and the Commonwealth of Pennsylvania, who at all times relevant hereto was the Commissioner of the Philadelphia Department of Prisons. Defendant Carney was responsible for establishing and enforcing policies and procedures at the Philadelphia Department of Prisons and CFCF and also responsible for hiring, training, and supervision of all correctional and medical staff at the Philadelphia Department of

Prisons and CFCF. This Defendant is sued both in her official and individual capacities, and at all times relevant, was acting under color of state law and authority and within the course, scope and authority of her employment with Defendant City of Philadelphia.

8. At all times relevant to this Complaint, defendants Correctional Officers John Doe 1-10 (herein "C/Os Doe 1-10) were correctional officers or supervisors employed by Defendant City of Philadelphia to work at CFCF. Plaintiff does not presently know the names of these defendants but will seek leave to amend the Complaint so as to name each appropriate defendant after discovery.

9. Defendants C/Os Doe 1-10 were at all times material hereto acting in the course and scope of their employment.

10. Defendants C/Os Doe 1-10 were at all times material hereto acting under color of state law.

11. Defendants C/Os Doe 1-10 are being sued in their individual capacities.

12. At all material times, all individually named Defendants acted in concert, pursuant to an agreement and/or policy or custom of the City of Philadelphia to cause harm to Carmelo Gabriel Ocasio by intentionally or, with deliberate indifference, failing to properly monitor, supervise, and aid him and other inmates and by denying him and other inmates adequate supervision, care and aid.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, and 1343 as Plaintiff's claims arise under the United States Constitution, 42 U.S.C. § 1983 and 42 U.S.C § 1988.

14. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants reside in this district and all Defendants are residents of the Commonwealth of Pennsylvania and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## **OPERATIVE FACTS**

15. The preceding paragraphs and allegations stated above are incorporated by reference as though fully set forth herein.

16. Prior to Carmelo Gabriel Ocasio's incarceration on October 13, 2021, policymakers in the City of Philadelphia and CFCF and specifically those in charge of the operation of CFCF were aware of the dangers to people suffering from opioid addiction entering Philadelphia Prisons, including CFCF, and specifically the dangers associated with allowing inmates to come into possession of controlled substances and ingest controlled substances while incarcerated.

17. The residents of Philadelphia County along with residents of many other communities in the United States, have been subjected to devastating public health epidemics of opioid addiction and overdose.

18. Policymakers in the City of Philadelphia and CFCF knew, prior to Carmelo Gabriel Ocasio's admission to CFCF in October 2021, that opioid and fentanyl addiction were chronic diseases that were directly detrimental to the community, and that opioid dependent or addicted persons were frequently biologically induced to act in an anti-social manner that may be totally inconsistent with the person's character.

19. Policymakers in the City of Philadelphia and CFCF were aware that the behavior induced by chronic opioid and fentanyl addiction would bring individuals in contact with the criminal justice system and specifically CFCF.

20. The Correctional Policymakers and officers in the City of Philadelphia and CFCF have been aware of these patterns of increased abuse of fentanyl and other-opiate-based controlled substances and the effect on the CFCF population.

21. The Correctional Policymakers and officers in the City of Philadelphia and CFCF were or should have been particularly attuned to patterns of fentanyl and opiate abuse due to the disproportionately high number of fentanyl and opiate abusers typically present in a correctional population.

22. Despite knowing of the serious medical risks to people under the influence of fentanyl, Defendant City of Philadelphia failed to provide adequate staffing, policies, procedures, protocols, and practices in monitoring inmates, and the premises to ensure that these illegal drugs were not entering the jails and to ensure that all inmates including Carmelo Gabriel Ocasio would receive proper aid if they did come under the influence of fentanyl and other controlled substances.

23. Despite knowing of the serious medical risks to people under the influence of fentanyl, Defendant City of Philadelphia failed to provide adequate staffing, policies, procedures, protocols and practices to prevent controlled substances from entering its jails.

24. On or about October 13, 2021, Carmelo Gabriel Ocasio was arrested by Philadelphia Police and transferred to CFCF located at 7901 State Road, Philadelphia, PA 19136 after his preliminary arraignment.

25. According to prison medical records, on October 23, 2021, Carmelo Gabriel Ocasio underwent an assessment with medical staff and indicated that he was diagnosed with PTSD and anxiety and used medical marijuana.

26. According to prison medical records, Carmelo Gabriel Ocasio reported having nightmares and panic attacks while incarcerated.

27. According to prison medical records, prior to his unfortunate death, Carmelo Gabriel Ocasio reported a history of opioid abuse, and mental illness.

28. It is known that inmates with a history of opioid abuse may attempt to obtain narcotics in an attempt to satisfy their addictions.

29. Defendants City of Philadelphia, Carney, and C/Os Doe 1-10 knew of the potential for this behavior to occur with inmates because numerous inmates have died from an overdose at CFCF in recent history.

30. Defendants City of Philadelphia, Carney, and C/Os Doe 1-10 knew that there was a widespread custom of allowing controlled substances to enter the City's jails because from January 1, 2014 through February 28, 2021 there have been 1,162 instances of drugs being found within the City's jails.

31. In 2016, one inmate died as a result of drug intoxication at CFCF.

32. In 2017, one inmate died as a result of drug intoxication at CFCF.

33. In 2018, four inmates died as a result of drug intoxication in City of Philadelphia jails, three of those four deaths occurred at CFCF.

34. In 2019, two inmates died as a result of drug intoxication at CFCF.

35. In 2020, three inmates died as a result of drug intoxication at CFCF.

36. In 2021, six inmates died as a result of drug intoxication in City of Philadelphia jails, five of the six deaths occurred at CFCF.

37. In 2022, three inmates died as a result of drug intoxication in City of Philadelphia jails prior to Carmelo Gabriel Ocasio's death.

38. Carmelo Gabriel Ocasio's death was the fourth death in 2022 due to drug intoxication in City of Philadelphia jails. Three of the four deaths in 2022 occurred at CFCF.

39. It is imperative that correctional officers closely monitor and observe inmates to ensure that the inmates do not obtain illegal narcotics from within the jail and die of drug intoxication.

40. It is imperative that correctional officers closely monitor and observe inmates to determine if they are under the influence of a controlled substance to ensure the inmates can receive the appropriate medical treatment in a timely manner.

41. It is imperative that correctional officers conduct routine checks on inmates to ensure that the inmates do not obtain illegal narcotics within the jail.

42. Defendants City of Philadelphia, Carney, and C/Os Doe 1-10, failed with deliberate indifference, to monitor Carmelo Gabriel Ocasio for potential drug intoxication

43. Defendants City of Philadelphia, Carney, and C/Os Doe 1-10 failed, with deliberate indifference to conduct routine checks on Carmelo Gabriel Ocasio's cell to ensure that he was not in possession of controlled substances and was not in danger of drug intoxication.

44. Upon information and belief, Carmelo Gabriel Ocasio was assigned to D2 Pod 4 at CFCF.

45. Correctional officers at CFCF, including defendants C/Os Doe 1-10 are required to observe and evaluate inmates periodically.

46. Defendants C/Os Doe 1-10 failed to observe and evaluate Carmelo Gabriel Ocasio periodically while he was in his cell.

47. On or about September 17, 2022 or September 18, 2022 Carmelo Gabriel Ocasio was serving a county jail sentence at CFCF and was also incarcerated at CFCF as a pre-trial detainee for a separate open criminal case.

48. On or about September 17, 2022 or September 18, 2022 Carmelo Gabriel Ocasio became unresponsive while in his cell.

49. On or about September 17, 2022 or September 18, 2022, Carmelo Gabriel Ocasio's cellmate, Ezequiel Vasquez, found him unresponsive in the cell and began to bang on the cell door for correctional officers to assist.

50. While Carmelo Gabriel Ocasio was unresponsive in his cell, Defendants C/Os Doe 1-10 refused to provide assistance to Carmelo Gabriel Ocasio and told his cellmate that he would have to wait until it was time for the jail to do the inmate count to receive any assistance.

51. Carmelo Gabriel Ocasio remained in his cell unresponsive until September 18, 2022 around 1:50pm.

52. When prison staff including Defendants C/Os Doe 1-10 finally went to Carmelo Gabriel Ocasio's cell, he was found unresponsive laying supine on the cell floor.

53. CPR was initiated, AED was applied and Narcan was administered, but unfortunately it was too late and Carmelo Gabriel Ocasio was pronounced dead by Medics when they finally arrived.

54. Inmates at the Philadelphia Department of Prisons, including but not limited to inmates at CFCF are required to be searched for illegal contraband, including but not limited to fentanyl, upon entry into the prison.

55. Visitors of the Philadelphia Department of Prisons, including but not limited to visitors of CFCF are required to be searched for illegal contraband, including but not limited to fentanyl, upon entry into the prison.

56. Correctional officers and staff members, who have contact with inmates, of the Philadelphia Department of Prisons, including but not limited to CFCF, are required to be searched for illegal contraband, including but not limited to fentanyl, each and every time they enter the prison.

57. Inmate mail should be monitored by Defendants City of Philadelphia, Carney and C/Os Doe 1-10 to ensure controlled substances are not entering the jails.

58. During the period of September 17, 2022 and September 18, 2022 and for a long period of time prior, correctional officers, staff members, visitors, inmates and inmate mail of CFCF were not properly and thoroughly searched upon entry into the prison, leading to many instances of drugs entering the jails and also leading to many inmate overdoses in Philadelphia jails.

59. During the period of September 17, 2022 and September 18, 2022 fentanyl entered CFCF either through the mail or through a Philadelphia correctional officer, staff member of CFCF, visitor of CFCF, and/or inmate of CFCF.

60. Defendants City of Philadelphia, Carney, and C/Os Doe 1-10 were aware of the staff shortages and lack of proper monitoring by CFCF staff including correctional officers for a long time prior to September 17, 2022 and did nothing to address or correct the

situation, resulting in a widespread practice at CFCF of allowing narcotics to enter CFCF resulting in twenty-one (21) deaths by drug intoxication in Philadelphia jails since 2016.

61. The lack of proper monitoring of inmates and lack of proper searching of all persons entering the prison and all materials entering the prison including inmate mail, was so widespread and pervasive within the Philadelphia Department of Prisons, including CFCF, that twelve (12) inmates died from drug intoxication in City of Philadelphia jails from January 2020 until Carmelo Gabriel Ocasio's fatal overdose in September of 2022.

62. Ten (10) out of the twelve (12) deaths from drug intoxication occurred at CFCF.

63. Despite the fact that there were so many instances of drugs found within the City of Philadelphia's jails and so many people had died of drug intoxication in Philadelphia jails prior to Carmelo Gabriel Ocasio's fatal overdose, Defendant City of Philadelphia, and Defendant Carney, with deliberate indifference, failed to create/change its policies and customs regarding drugs in Philadelphia jails and allowed this unconstitutional behavior to continue.

64. The City of Philadelphia failed to act affirmatively, though the need to take action to stop drugs from entering the jails and to stop overdoses within the jails was so obvious.

65. The City of Philadelphia was sued in a class action lawsuit in 2020 regarding the unconstitutional conditions of its jails including CFCF under civil docket 20-1959 in the Eastern District of Pennsylvania and Defendant City of Philadelphia has been found in contempt of Court due to the unconstitutional conditions of its jails including CFCF.

66. The City of Philadelphia's existing practice at the time of Carmelo Gabriel Ocasio's death was inadequate and resulted in violations of his constitutional rights.

67. The Policymakers in the City of Philadelphia were deliberately indifferent to the needs and constitutional rights of inmates including Carmelo Gabriel Ocasio when they knew, allowed and continued to allow drugs to enter the jails and allowed inmates to overdose and die.

68. In addition to fentanyl, synthetic marijuana, which is commonly referred to as K2, has been found in the possession of inmates at CFCF.

69. On September 17, 2022 or September 18, 2022, Carmelo Gabriel Ocasio obtained fentanyl while an inmate at CFCF under the care, custody and control of Defendants City of Philadelphia, Carney and C/Os Doe 1-10.

70. The monitoring of Carmelo Gabriel Ocasio, by Defendants C/Os Doe 1-10 was non-existent, inadequate and/or ineffective due to the deliberate indifference of Defendants C/Os Doe 1-10 and/or due to Defendant City of Philadelphia's failure to address staffing shortages at its jails including CFCF.

71. Carmelo Gabriel Ocasio, who was intentionally or with deliberate indifference, left locked in his cell without supervision and monitoring by Defendants C/Os Doe 1-10, was permitted to come into possession of fentanyl and ingest it while under the custody and control of Defendants City of Philadelphia, Carney and C/Os Doe 1-10.

72. Defendants C/Os Doe 1-10 intentionally and/or with deliberate indifference failed to inspect Carmelo Gabriel Ocasio's cell for contraband and allowed him to come into possession of illegal contraband.

73. Defendants City of Philadelphia, intentionally and/or with deliberate indifference failed to address staffing shortages and failed to properly train and supervise its correctional officers including but not limited to C/Os Doe 1-10.

74. After Carmelo Gabriel Ocasio became intoxicated, he was denied proper medical care by Defendants City of Philadelphia, Carney and C/Os Doe 1-10, even after Carmelo Gabriel Ocasio's cellmate advised Defendants of Carmelo Gabriel Ocasio's condition.

75. Carmelo Gabriel Ocasio was pronounced dead on September 18, 2022 at 2:32pm by Medic 17.

76. An autopsy was conducted on September 19, 2022, by Dr. Julia de la Garza-Jordan, MD, Associate Medical Examiner at the City of Philadelphia Office of the Medical Examiner. Based on the autopsy findings, and the results of the toxicology studies, Dr. de la Garza-Jordan concluded that the cause of death was Drug Intoxication ( Fentanyl, Alprazolam).

77. As a direct and proximate result of the unreasonable, unjustifiable and unconstitutional conduct of Defendants City of Philadelphia, Carney and C/Os Doe 1-10, Carmelo Gabriel Ocasio was caused to suffer the following:

    a.  Drug Intoxication;

    b.  Cardiac arrest;

    c.  Emotional distress;

    d.  Physical pain and suffering;

    e.  Mental Anguish;

    f.  Embarrassment;

    g.  Disfigurement;

    h.  Loss of life's pleasures; and

    i.  Death

78. Carmelo Gabriel Ocasio., deceased, left surviving him, one juvenile daughter, A.O. who is a beneficiary under the Wrongful Death Act:

79. As a result of the conduct of Defendants City of Philadelphia, Carney and C/Os Doe 1-10, as set forth herein, Carmelo Gabriel Ocasio, deceased, was caused grave injuries and death resulting in the entitlement to damages by the beneficiaries under the Wrongful Death Act.

80. Plaintiff, Carmelo Ocasio, Jr., Administrator of the Estate of Carmelo Gabriel Ocasio claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral and burial expenses and expenses of administration necessitated by reason of the injuries causing Carmelo Gabriel Ocasio's death.

81. On behalf of the Wrongful Death Act beneficiary, the Administrator claims damages for monetary support that decedent would have provided to the beneficiary during his lifetime, including but not limited to, the support provided, or which could have been expected to have been provided to the beneficiary.

82. On behalf of the Wrongful Death Act beneficiary, the Administrator claims damages for services provided of which could have been expected to have been performed in the future.

83. On behalf of the Wrongful Death Act beneficiary, the Administrator claims damages for all pecuniary loss suffered by the beneficiary.

84. On behalf of the Wrongful Death Act beneficiary, the Administrator claims damages for all loss of consortium, comfort, society, guidance, and tutelage that the beneficiary may have received from the decedent as a result of the decedent's untimely death.

85. On behalf of the Wrongful Death Act beneficiary, the Administrator claims damages for the full measure of damages allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

86. Plaintiff Carmelo Ocasio Jr., Administrator of the Estate of Carmelo Gabriel Ocasio, deceased, is entitled to bring this action on behalf of the Estate of Carmelo Gabriel Ocasio, deceased, under and by virtue of the Survival Act, 42 Pa.C.S. §8302, and the applicable Rules of Civil Procedure and the decisional law interpreting said Act, which provide for the survivability of causes of action.

87. As a result of the conduct of Defendants City of Philadelphia, Carney and C/Os Doe 1-10, set forth herein, Carmelo Gabriel Ocasio was caused grave injuries and death, resulting in the entitlement to damages by his Estate under the Survival Act.

88. As a result of the death of Carmelo Gabriel Ocasio, his Estate has been deprived of the economic value of his life expectancy, and Plaintiff claims under the Survival Act, damages for all pecuniary losses suffered by the Estate as a result of this decedent's death, including all loss of income, earnings, retirement income, benefits and Social Security income.

89. Plaintiff Carmelo Ocasio, Jr., Administrator of the Estate of Carmelo Gabriel Ocasio, deceased, further claims, under the Survival Act, the total amount that the decedent would have earned in the future, minus the costs of personal maintenance.

90. Plaintiff Carmelo Ocasio, Jr., Administrator of the Estate of Carmelo Gabriel Ocasio, deceased, further claims, under the Survival Act, damages for the conscious pain and suffering endured by decedent prior to his death, including physical pain and suffering, and mental pain and suffering leading to decedent's death.

91. Plaintiff Carmelo Ocasio, Jr., Administrator of the Estate of Carmelo Gabriel Ocasio, deceased, further claims, under the Survival Act all damages recoverable pursuant to 42 Pa.C.S. §8302, and the decisional law interpreted by said Act.

92. The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

93. Defendants C/Os Doe 1-10 in all of their actions and inactions described herein with regard to Carmelo Gabriel Ocasio were all acting under the color of state law.

94. On September 17, 2022 and September 18, 2022, C/Os Doe 1-10 were working as Correctional Officers for the City of Philadelphia and were present at CFCF.

95. On September 17, 2022 and September 18, 2022 Defendants C/Os Doe 1-10 were assigned to work at post D2 Pod 4 at CFCF, where Carmelo Gabriel Ocasio was being held.

96. Defendants C/Os Doe 1-10 were required to conduct routine checks on inmate Carmelo Gabriel Ocasio so that he could be monitored for drug intoxication and general well-being.

97. Defendants C/Os Doe 1-10 failed with deliberate indifference to conduct these routine checks even after Carmelo Gabriel Ocasio's cellmate alerted Defendants C/Os Doe 1-10 of Carmelo Gabriel Ocasio's medical emergency.

98. Defendants C/Os Doe 1-10 did not have any conversations with Carmelo Gabriel Ocasio checking on his well-being on September 17, 2022 and September 18, 2022.

99. Defendants C/Os Doe 1-10 knew or should have known that Carmelo Gabriel Ocasio had reported a history of opioid abuse, as set forth in his medical records.

100. Defendants C/Os Doe 1-10 knew or should have known that an inmate with Carmelo Gabriel Ocasio's history of opioid abuse would attempt to continue his practice

of drug usage while incarcerated especially knowing that he was experiencing anxiety, PTSD, and panic attacks while incarcerated.

101.   Defendants C/Os Doe 1-10 are responsible for ensuring the health, safety and well-being of inmates placed under their custody and control, and are responsible for enacting, enforcing and administering appropriate policy, procedure protocol and practices to carry out this function.

102.   Defendants C/Os Doe 1-10 were aware that Carmelo Gabriel Ocasio had a clearly established constitutional right to bodily integrity and right to medical care for serious medical needs at the time of Carmelo Gabriel Ocasio's death and at the time they were alerted by Carmelo Gabriel Ocasio's cellmate of his medical emergency.

103.   Defendants C/Os Doe 1-10 deprived Carmelo Gabriel Ocasio of constitutional guaranteed liberty interest in violation of his rights to due process of law under the Fourteenth Amendment to the United States Constitution.

104.   Defendants C/Os Doe 1-10 deprived Carmelo Gabriel Ocasio of constitutional guaranteed right to be free from cruel and unusual punishment in violation of his rights to under the Eighth Amendment to the United States Constitution.

105.   In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendants C/Os Doe 1-10 failed to properly and sufficiently monitor Carmelo Gabriel Ocasio and other inmates to prevent inmates, including Carmelo Gabriel Ocasio, from obtaining controlled substances, such as fentanyl.

106.   In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendants C/Os Doe 1-10 failed to observe and monitor Carmelo Gabriel Ocasio's cell

so as to detect or prevent controlled substances, such as fentanyl, from entering his cell and his possession.

107.     In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendants C/Os Doe 1-10 failed to observe, supervise, control and/or monitor the activity of inmates and correctional officers in and around Carmelo Gabriel Ocasio's cellblock, so as to detect or prevent Carmelo Gabriel Ocasio from possessing controlled substances, such as fentanyl.

108.     In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendants C/Os Doe 1-10 failed to properly and adequately monitor, control and observe Carmelo Gabriel Ocasio, so as to detect efforts by Carmelo Gabriel Ocasio to obtain controlled substances or prevent him from possessing controlled substances, such as fentanyl.

109.     In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendants C/Os Doe 1-10 failed to properly guard the entrance of CFCF and the area of D2 Pod 4 and failed to properly search all persons entering CFCF and specifically cell block D2 Pod 4 to ensure that no one entered with illegal contraband including fentanyl.

110.     In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendants C/Os Doe 1-10 failed to properly guard the entrance of CFCF and failed to properly monitor mail that was being sent to inmates to ensure that illegal contraband including fentanyl entered the jails.

111.     The conduct of Defendants C/Os Doe 1-10, as set forth herein, demonstrates that the harm caused to Carmelo Gabriel Ocasio was a foreseeable and fairly direct result of the Defendants' conduct.

112.   The conduct of Defendants C/Os Doe 1-10, as set forth above, demonstrates that Defendants acted with deliberate indifference and conscious disregard of the great risk of serious harm to Carmelo Gabriel Ocasio

113.   The conduct of C/Os Doe 1-10, as set forth herein, violated Carmelo Gabriel Ocasio's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and remediable under 42 U.S.C. § 1983.

114.   As alleged above, Defendants C/Os Doe 1-10 knew that Carmelo Gabriel Ocasio was particularly vulnerable to overdosing and that there was a strong likelihood that he would attempt to obtain controlled substances, including fentanyl, and notwithstanding this knowledge of a significant risk to Carmelo Gabriel Ocasio's health and safety, they were deliberately indifferent by failing to take any action or precaution to prevent Carmelo Gabriel Ocasio from coming into possession of fentanyl and fatally overdosing, such as conducting periodic checks on his cell, inspecting his cell, and inspecting him to ensure he was not in possession of fentanyl or other controlled substances even after being alerted by his cellmate of a medical emergency.

115.   The risk of Carmelo Gabriel Ocasio attempting to obtain and ingest fentanyl while an inmate at CFCF was obvious, as this behavior has happened numerous times in the past.

116.   Defendants C/Os Doe 1-10 intentionally and/or with deliberate indifference ignored this risk and allowed Carmelo Gabriel Ocasio to possess and ingest fentanyl.

117.   As the direct and proximate result of the above deliberate indifference of Defendants C/Os Doe 1-10, Carmelo Gabriel Ocasio possessed and ingested fentanyl, overdosed and died.

118.    The actions of all named defendants manifested a deliberate indifference to

Carmelo Gabriel Ocasio's constitutional rights in violation of the Eighth and Fourteenth

Amendment to the United States Constitution and 42 U.S.C. section 1983.

119.    The above described actions of Defendants C/Os Doe 1-10, in their individual

capacities, were so malicious, intentional, and reckless and displayed such a reckless

indifference to Plaintiff's rights and well-being, that the imposition of punitive damages

is warranted.

**WHEREFORE,** Plaintiff demands compensatory and punitive damages against

Defendants C/Os Doe 1-10 jointly and/or severally, in an amount sufficient to fully and

adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs,

attorney's fees and all other appropriate relief.

COUNT II – CIVIL RIGHTS – 42 U.S.C. §1983
DELIBERATE INDIFFERENCE TO KNOWN RISK OF DRUG OVERDOSE
PLAINTIFF V. COMMISSIONER BLANCHE CARNEY

120.    The preceding paragraphs and allegations are incorporated by reference as though

fully set forth herein.

121.    Defendant Carney in all of her actions and inactions described herein with regard

to Carmelo Gabriel Ocasio were all acting under the color of state law.

122.    On September 17, 2022 and September 18, 2022 Defendant Carney was working

as Commissioner for the City of Philadelphia Department of Prisons

123.    On September 17, 2022 and September 18, 2022 Defendant Carney was

responsible for supervising correctional officers at CFCF, including the area of D2 Pod 4,

where Carmelo Gabriel Ocasio was being held.

124.    Defendant Carney was required to ensure that correctional officers conduct routine checks on inmate Carmelo Gabriel Ocasio so that he could be properly monitored for his general well-being and for drug intoxication.

125.    Defendant Carney failed with deliberate indifference to supervise the correctional officers, resulting Carmelo Gabriel Ocasio coming into possession of controlled substances, overdosing and dying.

126.    As Commissioner of the Philadelphia Department of Prisons, Defendant Carney knew or should have known that Carmelo Gabriel Ocasio. had reported a history if opioid abuse.

127.    As Commissioner of the Philadelphia Department of Prisons, Defendant Carney was required to inform the correctional officers working at CFCF of the necessity to monitor Carmelo Gabriel Ocasio for potential drug intoxication.

128.    Defendant Carney failed with deliberate indifference to inform the correctional officers of Carmelo Gabriel Ocasio's condition.

129.    Defendant Carney failed with deliberate indifference to ensure that Carmelo Gabriel Ocasio would be properly monitored for opioid withdrawal.

130.    Defendant Carney failed to personally conduct routine checks on Carmelo Gabriel Ocasio to monitor him for potential opioid withdrawal.

131.    As Commissioner, Defendant Carney was aware of the fatal consequences of failing to properly monitor inmates in their jail cells because prior to Carmelo Ocasio's fatal overdose, there were twenty (20) fatal overdoses in Philadelphia jails since 2016.

132.    Although, Defendant Carney was aware of the custom of allowing drugs to enter Philadelphia jails, Defendant Carney was deliberately indifferent to Carmelo Gabriel

Ocasio's constitutional rights and failed to properly monitor him and failed to prevent drugs from entering his jail cell ultimately leading to his untimely death.

133. Defendant Carney knew or should have known that an inmate with Carmelo Gabriel Ocasio's history of opioid abuse would attempt to continue his practice of drug usage while incarcerated.

134. Defendant Carney is responsible for ensuring the health, safety and well-being of inmates placed under her custody and control, and is responsible for enacting, enforcing and administering appropriate policy, procedure protocol and practices to carry out this function.

135. Defendant Carney was aware that Carmelo Gabriel Ocasio had a clearly established constitutional right to bodily integrity and right to medical care for serious medical needs at the time of Carmelo Gabriel Ocasio's death.

136. Defendant Carney deprived Carmelo Gabriel Ocasio of constitutional guaranteed liberty interest in violation of his rights to due process of law under the Fourteenth Amendment to the United States Constitution.

137. Defendant Carney deprived Carmelo Gabriel Ocasio of constitutional guaranteed right to be free from cruel and unusual punishment in violation of his rights under the Eighth Amendment to the United States Constitution.

138. In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendant Carney failed to properly and sufficiently monitor Carmelo Gabriel Ocasio to prevent him from obtaining controlled substances, such as fentanyl.

139. In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendant Carney failed to observe and monitor Carmelo Gabriel Ocasio's cell so as to

detect or prevent controlled substances, such as fentanyl, from entering his cell and his possession.

140.     In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendant Carney failed to observe, supervise, control and/or monitor the activity of inmates and correctional officers in and around Carmelo Gabriel Ocasio's cellblock, so as to detect or prevent Carmelo Gabriel Ocasio from possessing controlled substances, such as fentanyl.

141.     In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendant Carney failed to properly guard the entrance of CFCF and D2 Pod 4 and failed to properly search all persons entering CFCF and specifically cell block D2 Pod 4 to ensure that no one entered with illegal contraband including fentanyl.

142.     In deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights, Defendant Carney failed to properly guard the entrance of CFCF and scan all inmate mail to ensure that inmates were not receiving illegal contraband including fentanyl through the mail.

143.     The conduct of Defendant Carney as set forth herein, demonstrates that the harm caused to Carmelo Gabriel Ocasio was a foreseeable and fairly direct result of the Defendant Caney's conduct.

144.     The conduct Defendant Carney as set forth above, demonstrates that Defendant Carney acted with deliberate indifference and conscious disregard of the great risk of serious harm to Carmelo Gabriel Ocasio.

145. The conduct of Defendant Carney, as set forth herein, violated Carmelo Gabriel Ocasio's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and remediable under 42 U.S.C. § 1983.

146. As alleged above, Defendant Carney knew that Carmelo Gabriel Ocasio was particularly vulnerable to overdosing and that there was a strong likelihood that he would attempt to obtain controlled substances, including fentanyl, and notwithstanding this knowledge of a significant risk to Carmelo Gabriel Ocasio's health and safety, Defendant Carney was deliberately indifferent by failing to take any action or precaution to prevent Carmelo Gabriel Ocasio from coming into possession of fentanyl and fatally overdosing, such as conducting periodic checks on his cell, inspecting his cell, and inspecting him to ensure he was not in possession of fentanyl or other controlled substances.

147. The risk of Carmelo Gabriel Ocasio attempting to obtain and ingest fentanyl while an inmate at CFCF was obvious, as this behavior has happened numerous times in the past.

148. Defendants Carney intentionally and/or with deliberate indifference ignored this risk and allowed Carmelo Gabriel Ocasio to possess and ingest fentanyl.

149. As the direct and proximate result of the above deliberate indifference of Defendant Carney, Carmelo Gabriel Ocasio possessed and ingested fentanyl, overdosed and died.

150. The actions of all named defendants manifested a deliberate indifference to Carmelo Gabriel Ocasio's constitutional rights in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983.

151.    The above described actions of Defendant Carney in her individual capacity, was

so malicious, intentional, and reckless and displayed such a reckless indifference to

Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE,** Plaintiff demands compensatory and punitive damages against

Defendant Carney, in an amount sufficient to fully and adequately compensate the Plaintiff

and punish and deter the defendant, plus interest, costs, attorney's fees and all other

appropriate relief.

COUNTY III – 42 U.S.C. §1983 AND §1988<br>CUSTOM AND POLICY OF UNCONSTITUTIONAL CONDUCT<br>PLAINTIFF V. CITY OF PHILADELPHIA

152.    The preceding paragraphs and allegations are incorporated by reference as though

fully set forth herein.

153.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has

adopted and maintained for many years a recognized and accepted policy, custom, and/or

practice of condoning and/or the acquiescence of the deliberate indifference to serious

needs of inmates, and with deliberate indifference allowed fentanyl and other controlled

substances to enter its jails, allowing inmates, like Carmelo Gabriel Ocasio, to possess

these drugs, ingest these drugs, overdose and die, which policy, custom and/or practice

violates the Eighth and Fourteenth Amendments of the Constitution of the United States

and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C § 1983.

154.    The aforementioned unconstitutional policy, custom and/or practice is based on

Defendant City of Philadelphia's desire to save money by not providing the required

training to its employees to ensure that controlled substances do not enter the CFCF

premises.

155.     The aforementioned unconstitutional policy, custom and/or practice is based on

Defendant City of Philadelphia's desire to save money by not hiring a sufficient amount

of correctional officers to properly monitor, supervise, and provide adequate treatment

for its inmates.

156.     The Plaintiff believes and therefore avers that Defendant City of Philadelphia has

adopted and maintained for many years a recognized and accepted policy, custom, and/or

practice of failing to adequately train prison employees, including correctional officers,

regarding the warning signs of inmates experiencing opioid abuse and failing to

adequately train them regarding the necessary precautions to ensure that inmates do not

come into possession of fentanyl and other dangerous drugs, and of failing to discipline

employees who allow these overdoses to occur on their watch.

157.     The Plaintiff believes and therefore avers that Defendant City of Philadelphia has

adopted and maintained for many years a recognized and accepted policy, custom, and/or

practice of failing to adequately train prison employees on how to properly search all

persons entering the prison, including correctional officers, inmates, and visitors, to

ensure that controlled substances do not enter the premises.

158.     The Plaintiff believes and therefore avers that Defendant City of Philadelphia has

adopted and maintained for many years a recognized and accepted policy, custom, and/or

practice of failing to adequately train prison employees on how to properly scan inmate

mail to ensure that controlled substances do not enter the premises.

159.     Defendant City of Philadelphia has been deliberately indifferent to the rights of

inmates at CFCF to live in a drug free setting, and to be provided with essential medical

care, which deliberate indifference violates the Plaintiff's rights under the Eighth and

Fourteenth Amendments of the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. §1983.

160.     Plaintiff believes and therefore avers, that at the time of the aforementioned incident, Defendant City of Philadelphia, knew or should have known of the above described policy and/or custom and that it deliberately, and/or knowingly failed to take measures to stop or limit the policy and/or custom, including, inter alia, providing proper training, supervision, and control of the officers, agents, and/or employees of CFCF and provide proper monitoring, treatment and supervision of its inmates and to ensure the jail was adequately staffed with correctional officers.

161.     Defendant City of Philadelphia knew of this described policy and/or custom because since 2016, twenty (20) inmates died from drug intoxication while under the custody, care and control of Defendant City of Philadelphia prior to Carmelo Gabriel Ocasio's death.

162.     By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policy, Defendant City of Philadelphia, condoned, acquiesced in, participated in, and perpetrated the policy and/or custom in violation of the Plaintiff's rights under the Eighth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and was in violation of 42 U.S.C. §1983.

163.     Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained for many years a recognized and accepted policy and/or custom consisting of an inadequate system of review of prior CFCF overdose deaths and prior CFCF drug discoveries, which system has failed to identify instances of deliberate indifference to serious needs of inmates or to ensure that inmates' serious medical needs are being met and to ensure that controlled substances do not enter the CFCF premises.

164.     The conduct as set forth above, demonstrates that Defendant City of Philadelphia maintained policies, procedures, practices and customs that it knew provided inadequate treatment and monitoring of individuals addicted to opiates, including fentanyl, and individuals likely to suffer from opioid withdrawal, that had previously resulted in deprivation of constitutional rights of inmates.

165.   As a direct and proximate result of Defendant City of Philadelphia's unreasonable, unjustifiable and unconstitutional conduct, Carmelo Gabriel Ocasio was caused to suffer the injuries described above, including death.

**WHEREFORE,** pursuant to 42 U.S.C. § 1983 and §1988, Plaintiff demands compensatory damages against Defendant City of Philadelphia, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury as to all counts and all issues raised by this complaint.

Respectfully submitted,

**LAW OFFICE OF GREGORY J. PAGANO, P.C.**

BY:  /s/ Henry George
     HENRY GEORGE, ESQ.

1315 Walnut St. 12th Floor
Philadelphia, PA 19107
215-636-0160
Attorney for Plaintiff

September 11, 2024

EXHIBIT A

LETTERS OF ADMINISTRATION

**REGISTER'S OFFICE**
PHILADELPHIA COUNTY, PA

Nº: **A1359-2024**

ESTATE OF **Carmelo Gabriel Ocasio**

Social Security No. **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**

WHEREAS, **Carmelo Gabriel Ocasio**

late of **7133 Erdrick Street, Philadelphia, PA 19135**

died on the **18th** day of **September** , **2022** ;
and

WHEREAS, the grant of letters of administration is required for the administration of said estate.

THEREFORE, I, JOHN P. SABATINA, ESQ., Register for the Probate of Wills and Grant of Letters Testamentary and of Administration, in and for the County of Philadelphia in the Pennsylvania, hereby certify that I have granted Letters of Administration **Commonwealth of**

to **Carmelo Ocasio, Jr**

who ha **s** duly qualified as **Administrator** of the estate of the above named decedent and ha **s** agreed to administer the estate according to law, all of which fully appear of record in the Office of the Register of Wills of Philadelphia County, Pennsylvania.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of my office, at Philadelphia, the **28th** day of **March** **2024**

_Deputy Register_